ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| JUANDI NICASIO SALCEDO<br><br>RECURRENTE<br><br>V.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>RECURRIDOS | KLRA202500278 | *REVISIÓN JUDICIAL* procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm.: B705-38205<br><br>Sobre: Evaluación Plan Institucional |
| --- | --- | --- |

Panel integrado por su presidenta, la juez Brignoni Mártir, la jueza Álvarez Esnard, y la jueza Prats Palerm

Brignoni Mártir, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de julio de 2025.

El señor Juandi Nicasio Salcedo (señor Nicasio Salcedo o recurrente), miembro de la población correccional, comparece por derecho propio y en *forma pauperis* mediante un escrito de *Revisión Judicial*. Nos peticiona la revocación de la *Resolución* emitida el 20 de febrero de 2025 por el Departamento de Corrección y Rehabilitación de Puerto Rico (Departamento de Corrección). En virtud de este dictamen, la agencia resolvió que el recurrente debe permanecer confinado bajo la clasificación de custodia mediana.

Por los fundamentos expuestos a continuación, **confirmamos** el dictamen administrativo impugnado.

**I.**

Surge del expediente ante nuestra consideración que, el señor Nicasio Salcedo cumple múltiples condenas en la institución correccional de Ponce por portación y uso ilegal de armas, robo y agresión agravada.[1] En atención a su proceso de rehabilitación, el 20 de febrero de 2025, el

---

[1] Apéndice de la parte recurrente, pág. 12.

Comité de Clasificación y Tratamiento del Departamento de Corrección (Comité) celebró una reunión para evaluar su plan institucional.

Ese día, alcanzó unos acuerdos, y en virtud de estos, dicho Comité emitió *Resolución* en la que ratificó el nivel de custodia mediana del recurrente. Dispuso que bajo esa custodia participará de programas, actividades y tratamientos sin necesidad de medidas extremas de vigilancia. A esos efectos, formuló las siguientes determinaciones de hechos:

1. El Sr. Juandi Nicasio Salcedo fue [s]entenciado por el Tribunal Superior de Bayamón el 14 de diciembre de 2010 a cumplir una sentencia de 20 años por [infracción al] Art. 5.04 [de la] Ley de Armas, de 12 años por cada caso de[l] Art. 5.10 de la ley de Armas y de 8 años por [infracción al] Artículo 198 [de] [r]obo.

2. El 09 de marzo de 2011 fue sentenciado por el Tribunal Superior de Bayamón a cumplir una sentencia de 20 años (en cada caso) por [infracción al] Art. 5.04 [de la] Ley de Armas (03 casos), de 05 años (en cada caso) por [infracción al] Art 5.15 de [la] Ley de Armas (06 casos) y de 09 años y 06 meses (en cada caso) por [infracción al] Art.198 [r]obo (03 casos). Sentenciado por el Art. 79 (pena agravada).

3. El 28 de noviembre de 2011 fue sentenciado por el Tribunal Superior de San Juan a cumplir sentencia de 01 año (en cada caso) por [infracción al] Art 5.04 [de la] Ley de Armas (04 casos), de 06 meses y 01 día (en cada caso) por [infracción al Artículo 122 Agresión Grave (02 casos) y 01 año y 06 meses por [infracción al] Artículo 198 [r]obo.

4. Cumple una sentencia consolidada de 143 años y 06 meses. Cumple el mínimo de su sentencia el 22 de diciembre de 2020, [pues] le fue aplicada la Ley 85-2022 y el máximo está pautado para el 22 de noviembre de 2131.

5. El 29 de agosto de 2011 fue clasificado custodia máxima. El 02 de enero 2020 fue reclasificado a custodia [m]ediana[.] [C]ontinúa en esa custodia.

6. Se encuentra asignado al curso vocacional de Artes Gráficas. El 20 de diciembre de 2023 completa el primer término de Grado Asociado en Ciencias de Programación de computadoras ofrecido por Caribbean University en la Institución Principal.

7. Se encuentra realizando labores de mantenimiento interior en Fase 4 N Amarilla, las evaluaciones son favorables. Durante este periodo de evaluación no fue objeto de informes de querellas o actos de indisciplina.

8. Historial disciplinario
[El] 21 de junio de 2013 #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 Daños a la Propiedad Sanción: Suspensión de 08 semanas de comisaria[.]

El 24 de octubre de 2020 fue evaluado por Physician Correctional, no ameritó las terapias. El 08 de enero de 2024 completó las terapias de Aprendiendo a vivir sin violencia.

El 10 de octubre de 2024 se realiza prueba toxicológica arrojando resultados negativos a la detección de sustancias controladas.[2]

Oportunamente, el 24 de febrero de 2025, el aquí recurrente presentó su escrito de reconsideración.[3] Señaló que el Departamento de Corrección incidió al considerar el elemento de la gravedad del delito para ratificar su actual clasificación de custodia. Por tanto, impugnó la modificación discrecional aplicada pues descansa simplemente en el pronunciamiento de una sentencia impuesta por el Tribunal de Primera Instancia.

Evaluados sus argumentos, el 14 de marzo de 2025, el Departamento de Corrección emitió una determinación, notificada el 14 de abril de 2025, en la que declaró *No Ha Lugar* la solicitud de reconsideración.[4] En lo pertinente, dispuso el siguiente pronunciamiento administrativo:

El Comité de Clasificación y Tratamiento determinó utilizar la modificación discrecional "Gravedad del Delito" en consideración de las circunstancias de los delitos cometidos. Según se desprende de la información sometida por el confinado informa que los hechos ocurren en el Pueblo de Bayamón uno en la tienda de computadoras en la que se apropiaron de unas computadoras y dinero, en la segunda situación en una tienda de Open [Mobile] donde se apropiaron de dinero. En estos eventos se utilizó armas de fuego de manera ilegal.

Es sentenciado a cumplir 143 años y 6 meses de sentencia de los cuales ha cumplido 14 años 1 mes y 2 días; de ellos lleva en custodia mediana 5 años ininterrumpidos aproximadamente.

Resultó incurso en querella disciplinaria el 21 de junio de 2012 por [d]años a la propiedad del Estado Libre Asociado de Puerto Rico.

Por otro lado, el Comité de Clasificación y Tratamiento considero otros aspectos establecidos en el Manual para la Clasificación de Confinados como lo es la fecha prevista de excarcelación (21 de noviembre de 2130, dentro de los 105 años).

Tomamos conocimiento que completó el Programa de Evaluación y Asesoramiento el 8 de enero de 2024. Se encuentra asignado en el Curso Vocacional de Artes Gráficas. Completo la primera fase del Grado en Ciencias de Programación de Computadores.

Deberá continuar observando buenos ajustes institucionales y cumpliendo con el plan institucional trazado por el Comité de Clasificación y Tratamiento.[5]

---

[2] Apéndice de la parte recurrente, pág. 12.
[3] Apéndice de la parte recurrente, págs. 15-19.
[4] Apéndice de la parte recurrente, págs. 20-21.
[5] Apéndice de la parte recurrente, pág. 20.

Inconforme, el 12 de mayo de 2025, el señor Nicasio Salcedo recurrió ante este Tribunal de Apelaciones mediante una solicitud de *Revisión Judicial*, en la que presentó el siguiente señalamiento de error:

**ERRÓ EL COMITÉ DE CLASIFICACIÓN Y TRATAMIENTO AL RATIFICAR LA CUSTODIA MEDIANA A ESTE PETICIONARIO ESTO USANDO LA GRAVEDAD DEL DELITO COMO MODIFICACIÓN DISCRECIONAL A PESAR DE QUE ESTE CUMPLE CON LOS REQUISITOS TALES COMO DISPONE LA SECCIÓN 7 DEL MANUAL 9151, SUPRA, ASÍ COMO EL DERECHO ADQUIRIDO PARA OBTENER UNA RECLASIFICACIÓN DE CUSTODIA AL IGUAL PODER SEGUIR AVANZANDO EN EL DE REHABILITACIÓN Y OBTENER LA OPORTUNIDAD DE IR REINCORPORÁNDOME A LA LIBRE COMUNIDAD.**

El 18 de julio de 2025, el Departamento de Corrección por conducto de la Oficina del Procurador General presentó su oposición al recurso mediante *Escrito en Cumplimiento de Orden*, por lo que procedemos a abordar el marco legal pertinente a la controversia ante nuestra consideración.

**II.**

**A.** ***Revisión judicial de las determinaciones administrativas***

Es norma reiterada que, una parte inconforme con una determinación u orden administrativa final tiene el derecho a solicitar revisión judicial ante el Tribunal de Apelaciones de Puerto Rico. Véanse Artículo 4.006(c) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico, Ley 201-2003, 4 LPRA sec. 24y, según enmendada; Sección 4.2 de la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 38-2017, 3 LPRA sec. 9672, según enmendada (LPAU). Así pues, el derecho a cuestionar la determinación administrativa es parte del debido proceso de ley protegido por la Constitución de Puerto Rico. *ACT v. Prosol et als.*, 210 DPR 897, 908 (2022); *Asoc. Condómines v. Meadows Dev.*, 190 DPR 843, 847 (2014).

En nuestro esquema revisorio, los foros apelativos estamos llamados a conceder amplia deferencia a las decisiones agenciales. *Otero Rivera v. USAA Fed. Savs. Bank*, 2024 TSPR 70, 214 DPR ___ (2024); *OCS v. Point Guard Ins.*, 205 DPR 1005, 1026 (2020). Solo es posible sustituir "el criterio de la agencia por el del tribunal revisor cuando no exista

una base racional para explicar la decisión administrativa". *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, 213 DPR 743, 754 (2024)*; Capó Cruz v. Jta. Planificación et al.,* 204 DPR 581, 591 (2020). Ahora bien, no podemos imprimir un sello de corrección a las determinaciones o las interpretaciones administrativas irrazonables, ilegales o contrarias a derecho. *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021).

Ahora bien, la deferencia administrativa cede cuando: (1) la decisión no está basada en evidencia sustancial; (2) el organismo administrativo ha errado en la aplicación o interpretación de las leyes o los reglamentos; (3) ha mediado una actuación arbitraria, irrazonable o ilegal, o (4) la actuación administrativa lesiona derechos constitucionales fundamentales. *Voilí Voilá Corp. et al. v. Mun. Guaynabo, supra,* págs. 754-755; *Super Asphalt v. AFI y otro, supra*, pág. 819. No obstante, los tribunales apelativos revisores no intervendremos en las determinaciones de hechos siempre y cuando surja del expediente administrativo evidencia sustancial que las respalde. *The Sembler Co. v. Mun. De Carolina,* 185 DPR 800, 821-822 (2012). La evidencia sustancial es aquella prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Capó Cruz v. Jta. de Planificación et al., supra*, pág. 591; *Rebollo v. Yiyi Motors,* 161 DPR 69, 77 (2004).

En cambio, "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal" según establecido en la Sección 4.5 de la LPAU, 3 LPRA sec. 9675. En virtud de esta disposición, ostentamos la facultad para revisarlas completa y absolutamente. *IFCO Recycling v. Aut. Desp. Sólidos,* 184 DPR 712, 745 (2012); *Assoc. Ins. Agencies, Inc. v. Com. Seg*. P.R., 144 DPR 425, 436 (1997). Sin embargo, ello no implica "la sustitución automática del criterio e interpretación del organismo administrativo". *Capó Cruz v. Jta. Planificación et al*., *supra,* pág. 591; Véase, también, *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018).

En lo atinente al recurso presente, nuestro esquema revisorio preceptúa que los dictámenes de las autoridades correccionales merecen

gran deferencia. *Cruz v. Administración*, 164 DPR 341, 357 (2005). Al respecto, el Tribunal Supremo de Puerto Rico establece lo siguiente:

> **Por lo general, la composición de estos comités la conforman peritos en el campo tales como técnicos sociopenales y oficiales o consejeros correccionales. Estos profesionales cuentan con la capacidad, la preparación, el conocimiento y la experiencia necesarios para atender las necesidades de los confinados y realizar este tipo de evaluaciones. Por esta razón, una determinación formulada por el referido Comité debe ser sostenida por el foro judicial siempre que no sea arbitraria o caprichosa y esté fundamentada en evidencia sustancial. Es decir, siempre que la decisión sea razonable, cumpla con el procedimiento establecido en las reglas y los manuales, y no altere los términos de la sentencia impuesta, el tribunal deberá confirmarla.** *Íd.*, págs. 354-355. (Énfasis nuestro).

Es decir, a base de su conocimiento especializado, la determinación agencial merece deferencia sustancial aun cuando no sea la única razonable. *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 1003 (2011). Esta normativa contempla que las instituciones correccionales "están en mejor posición para resolver las controversias surgidas en torno a los asuntos que le fueron encomendados por ley". *Cruz v. Administración*, *supra*, págs. 355-356.

**B.      *Clasificación de custodia en institución correccional***

La Constitución de Puerto Rico establece como política pública la reglamentación de las instituciones penales para que sirvan a sus propósitos en forma efectiva y propendan al tratamiento adecuado de la población correccional, y a su vez, posibiliten su rehabilitación moral y social. Véase Art. VI, Sec. 19, Const. PR, LPRA Tomo I. En virtud de este mandato constitucional, el Artículo 2 de del Plan de Reorganización del Departamento y Rehabilitación, Ley Núm. 2-2011 (Plan de Reorganización), 3 LPRA, Ap. XVIII, Art. 2, según enmendado, ordena "la creación de un sistema integrado de seguridad y administración correccional en donde las funciones y los deberes se armonicen en un proceso facilitador a la imposición de penas y medidas de seguridad".

En específico, el Artículo 4 de la Ley Núm. 2-2011, *supra*, instaura la creación del Departamento de Corrección y Rehabilitación de Puerto Rico como el organismo responsable de implantar la política pública relacionada con el sistema correccional y de rehabilitación de adultos y

menores, así como de la custodia de todos. 3 LPRA, Ap. XVIII, Art. 4.

A esos fines, el Artículo 7(aa) del Plan de Reorganización, *supra*, le concede al Secretario del Departamento de Corrección las siguientes facultades:

> [A]doptar, establecer, desarrollar, enmendar, derogar e implementar reglas, reglamentos, órdenes, manuales, normas y procedimientos para el funcionamiento efectivo del Departamento y de los organismos bajo su jurisdicción, a los fines de regir la seguridad, la disciplina interna y la conducta de funcionarios, empleados y de la clientela, así como los programas y servicios. 3 LPRA, Ap. XVIII, Art. 7(aa).

Al amparo de este deber ministerial, el Secretario adoptó el Manual para la Clasificación de los Confinados, Reglamento Núm. 9151 de 22 de enero de 2020 (el Manual de Clasificación (2020) o el Reglamento 9151). La perspectiva general de este cuerpo reglamentario es la siguiente:

> El método de clasificación de confinados es el eje central de una administración eficiente y un sistema correccional eficaz. Por lo tanto, la clasificación de los confinados consiste en la separación sistemática y evolutiva de los confinados en subgrupos, en virtud de las necesidades de cada individuo, y las exigencias y necesidades de la sociedad, desde la fecha de ingreso del confinado hasta la fecha de su excarcelación.

> Además de satisfacer las necesidades del confinado, el proceso de clasificación coordina la custodia física de los confinados en los programas y recursos disponibles dentro del Sistema Correccional. De conformidad con lo anterior, se pueden presupuestar fondos de manera adecuada para llenar las necesidades específicas de la institución, del personal y de la población correccional una vez estén clasificados funcionalmente. Más aún, un proceso sistemático de clasificación contribuye a mantener la sociedad protegida de las personas que han violentado las reglas formales.

En esa línea, el Comité de Clasificación de Confinados (Comité) tiene amplia discreción para evaluar el progreso del miembro de población correccional en aras de determinar el nivel de custodia aplicable. *Lebrón Laureano v. Depto. Corrección*, 209 DPR 489, 504 (2022). Por ello, "si una decisión de clasificación de custodia es razonable y cumple con el procedimiento de las reglas y manuales sin alterar los términos de la sentencia impuesta, debemos confirmarla". *Íd.*; *Cruz v. Administración*, *supra*, pág. 355.

En aras de cumplir con los preceptos reglamentarios, la determinación sobre el nivel de custodia exige que se realice un adecuado balance de intereses como se discute a continuación:

La determinación administrativa relativa al nivel de custodia asignado a un confinado requiere que se realice un balance de intereses adecuado. Por una parte, estará el interés público de lograr la rehabilitación del confinado, así como mantener la seguridad institucional y general del resto de la población penal; de la otra, estará el interés particular del confinado de permanecer en un determinado nivel de custodia. Además, al momento de determinarse la procedencia de un cambio en el nivel de custodia, deberá considerarse una serie de factores subjetivos y objetivos, para cuya atención se requiere la pericia de la Administración de Corrección. *Cruz v. Administración*, *supra*, pág. 352.

El Comité de las instituciones correccionales es el ente responsable de evaluar las necesidades de seguridad y los programas de los confinados sentenciados. Sección 1, Reglamento Núm. 9151, *supra*. Este cuerpo administrativo tiene el deber de revisar los niveles de custodia para los confinados de custodia mínima y mediana cada doce (12) meses de conformidad al Manual de Clasificación. Sección 2, Parte V(D) del Reglamento 9151, *supra*.

En lo pertinente al caso objeto de revisión judicial, el precitado reglamento define los niveles de custodia de las siguientes maneras:

**NIVELES DE CUSTODIA**

- **MÁXIMA** Confinados de la población general que requieren un grado alto de control y supervisión. A estos individuos se les puede restringir de determinadas asignaciones de trabajo y de celda, así como de determinadas áreas dentro de la institución, según se estime necesario por razones de seguridad. Se requerirán por lo menos dos oficiales correccionales como escolta para realizar viajes de rutina o de emergencia fuera de la institución. Se utilizarán esposas, cadenas y grilletes en todo momento mientras los confinados de custodia máxima se encuentren fuera el perímetro de seguridad (la verja o el muro). Estos confinados estarán en celdas y no en dormitorios. Esto no limita la participación del confinado en los programas y servicios. Contarán con un período mínimo de dos (2) horas diarias de recreación física al aire libre, según lo permitan las condiciones climáticas.

- **MEDIANA** Confinados de la población general que requieren un grado intermedio de supervisión. Estos confinados son asignados a celdas o dormitorios y son elegibles para ser asignados a cualquier labor o actividad que requiera supervisión de rutina dentro del perímetro de seguridad de la institución. Se requiere de dos oficiales correccionales como escolta para realizar viajes, ya sean de rutina o de emergencia, fuera de la institución, y se utilizarán esposas con cadenas en todo momento. A discreción de los oficiales de escolta, se podrán utilizar otros implementos de restricción.

- **MÍNIMA** Confinados de la población general que son elegibles para habitar en viviendas de menor seguridad y que pueden trabajar fuera del perímetro con un mínimo de supervisión. Estos confinados son elegibles para los programas de trabajo y actividades en la comunidad compatibles con los requisitos normativos. Estos individuos pueden hacer viajes de rutina o de

emergencia fuera de la institución sin escolta, cuando tengan un pase autorizado, y pueden ser escoltados sin implementos de restricción. Sección 1, Reglamento 9151, *supra.*

Mientras más restrictivo es el nivel de seguridad asignado, con mayor frecuencia se efectúa la evaluación para determinar si la conducta del recluso amerita una reducción de custodia. *López Borges v. Adm. Corrección*, 185 DPR 603, 609 (2012). Véase, también, *Cruz v. Administración, supra,* pág. 354.

Por su parte, la Sección 7 del Manual de Clasificación (2020), *supra*, regula el proceso de reclasificación de custodia. El apartado II de esta Sección establece el objetivo de la reclasificación y fija un procedimiento estandarizado por formularios:

II. OBJETIVO DE LA RECLASIFICACIÓN DE CUSTODIA

El Formulario de Reclasificación de Custodia, Escala de Reclasificación, (Apéndice K) se utiliza para actualizar y revisar la evaluación inicial de custodia del confinado. La reevaluación de custodia no necesariamente tiene como resultado un cambio en la clasificación de custodia o la vivienda asignada. Su función primordial es verificar la adaptación del confinado y prestarle atención a cualquier situación que pueda surgir.

La revaluación de custodia se parece a la evaluación inicial de custodia pero recalca aún más en la conducta institucional como reflejo del comportamiento real del confinado durante su reclusión. Es importante que los confinados que cumplan sentencias prolongadas tengan la oportunidad de obtener una reducción en niveles de custodia mediante el cumplimiento con los requisitos de la institución. Sección 7(II), Reglamento 9151, *supra*.

A esos efectos, el Formulario de Reclasificación de Custodia: Escala de Reclasificación de Custodia (Formulario), contenido en el Apéndice K(I) del Manual de Clasificación (2020), dispone una serie de renglones para identificar a aquel confinado que representa un grave riesgo para la seguridad y la operación ordenada de la institución correccional. Los criterios recogidos en este Formulario son los siguientes:

(1) la gravedad de cargos/sentencias actuales; (2) el historial de delitos previos; (3) el historial de fuga, o tentativas de fuga; (4) el número de acciones disciplinarias; (5) las acciones disciplinarias previas serias; (6) las sentencias anteriores por delitos graves como adulto (de los últimos cinco años); (7) la participación de programas/tratamiento, y (8) la edad actual. *Lebrón Laureano v. Depto. Corrección*, *supra*, pág. 501.

Los renglones del (1) al (3) tienen la intención de identificar al confinado que representa un grave riesgo para la seguridad y operación

ordenada de la institución. Apéndice K(I), Sección II (1)-(8), Reglamento 9151, *supra*. En el caso de aquellos confinados que obtengan una puntuación de siete (7) o más en los primeros renglones, se recomienda que se coloquen en máxima custodia sin tomar en consideración las puntuaciones en otros renglones. *Íd.* En cambio, los renglones (4) al (8) tienen la intención de establecer una puntuación de custodia para el confinado que no es identificado inmediatamente como un riesgo de custodia máxima en los primeros tres renglones. *Íd.*

Nótese que el Comité mediante estos renglones asigna una puntuación que incide en el proceso clasificación de custodia tal como se esboza a continuación:

SECCIÓN III. RESUMEN DE LA ESCALA Y RECOMENDACIONES

A. NIVEL DE CUSTODIA INDICADO POR LA ESCALA: Use el Formulario de Reclasificación de Custodia (Escala de Reclasificación de Custodia) y haga un círculo alrededor del nivel de custodia designado por la siguiente escala:

Mínima         =         5 puntos o menos

Mediana        =         5 puntos o menos si el confinado tiene una orden de detención, de arresto, u orden de detención por violar la libertad bajo palabra o probatoria.

Mediana        =         6-10 puntos en los renglones 1-8

Máxima         =         7 puntos o más en los renglones 1-3

Máxima         =         11 puntos o más en los renglones 1-8

No obstante, la consideración de estos reglones no es el único procedimiento que el Comité debe ponderar al momento de asignar una clasificación. En ciertas circunstancias le compete aplicar las modificaciones discrecionales para decretar un nivel de custodia más alto.

Sobre este particular, el Manual de Clasificación (2020), *supra*, define las modificaciones discrecionales como el "conjunto de factores específicos de clasificación que el personal puede usar para modificar la puntuación de clasificación de un confinado, pero solamente con la aprobación del supervisor de clasificación". Sección 1, Reglamento 9151,

*supra*. Véase, también, *Lebrón Laureano v. Depto. Corrección*, *supra*, págs. 501-502. Así pues, las modificaciones discrecionales para un nivel de custodia más alto abarcan los siguientes factores: (1) gravedad del delito (2) historial de violencia excesiva, (3) afiliación prominente con gangas, (4) confinado de difícil manejo, (5) grados de reincidencia, (6) riesgos de fuga, (7) comportamiento sexual agresivo, (8) trastornos mentales o desajustes emocionales, (9) representa amenaza o peligro, (10) desobediencia ante las normas o rehusarse al plan de tratamiento, y (11) reingreso por violación de normas. Sección III(D) del Apéndice K(I), Reglamento 9151, *supra.*

En lo pertinente a este recurso apelativo, es menester destacar que, la gravedad de delito consiste en los siguientes factores:

> La puntuación subestima la gravedad del delito. El personal debe documentar las características del delito que aparecen en la declaración de los hechos que se están utilizando como fundamento para la decisión de la modificación.

> Los confinados cuyas circunstancias del delitos y sus consecuencias hayan creado una situación de tensión en la comunidad, revistiéndose el caso de notoriedad pública y la comunidad se sientas amenazada con su presencia.

> Que el Tribunal haya sentenciado al confinado a cumplir sentencia mediante Reincidencia Agravada. Sección III(D) del Apéndice K(I), Reglamento 9151, *supra*.

` Estas modificaciones se pueden aplicar para aumentar o disminuir el nivel de custodia. *Cruz v. Administración, supra,* pág. 353. No obstante, es importante precisar que en el escenario de sentencia de (99) años o más no se puede recurrir a la modificación de la gravedad del delito para mantener al confinado en la clasificación de máxima custodia:

> Confinados son sentencia de 99 años  o más y clasificados inicialmente en custodia máxima como  resultado de la sentencia, permanecerán en dicha custodia por cinco (años) incluyendo el tiempo cumplido en preventiva. Luego de ese periodo de tiempo, serán evaluados. Estos podrán ser reclasificados al nivel de custodia mediana si, de acuerdo con al resultado del instrumento de clasificación, procede. No se podrá recurrir al uso de la Modificación Discrecional sobre la "Gravedad del delito" ni al uso de los "fundamentos de extensión a lo largo de la sentencia" para mantenerlos en custodia máxima. Sección 2(V), Reglamento 9151, *supra*.

A esos fines, la determinación del nivel de custodia proviene de un conjunto de criterios y no solo de la puntuación obtenida en la escala de reclasificación. *Lebrón Laureano v. Depto. Corrección, supra*, pág. 502. En

vista de ello, tal determinación debe descansar en la totalidad del expediente, según establece el Manual de Clasificación, *supra*:

> Toda modificación discrecional debe estar basada en documentación escrita, proveniente de reportes disciplinarios, informes de querellas, informes de libros de novedades, documentos del expediente criminal o social, y cualquier otra información o documento que evidencie ajustes o comportamiento del confinado contrario a las normas y la seguridad institucional. Sección III(D) del Apéndice K(I), Reglamento 9151, *supra*.

Ahora bien, la determinación de clasificación admite cuestionamiento de aquella parte inconforme. El miembro correccional inconforme con la decisión relativa a su custodia tiene el derecho de recurrir dentro del término de treinta (30) días ante el Tribunal de Apelaciones una vez haya acogido el proceso de reconsideración. Sección 7(V) de la Enmienda al Manual para la Clasificación, Reglamento 9281 de 20 de mayo de 2021.

**III.**

Amparado en su derecho a la revisión judicial, el señor Nicasio Salcedo peticiona la revocación del dictamen emitido por el Departamento de Corrección. Argumenta que la agencia debió evaluar la totalidad del expediente para constatar el progreso de su rehabilitación. Razona que las modificaciones discrecionales aplicadas demuestran un claro abuso de discreción por parte de la agencia. Por tanto, aduce que no debió considerarse el factor de la gravedad de los delitos para ratificar su actual clasificación de mediana custodia.

Examinado con sumo cuidado el recurso ante nuestra consideración, determinamos que la agencia no erró al decretar la clasificación de custodia mediana del recurrente. El examen judicial corrobora que la ratificación de la clasificación impugnada descansó en un conjunto de criterios reglamentarios debidamente ponderados ante el organismo administrativo. Veamos.

Surge del expediente sometido por el recurrente que, el 20 de febrero de 2025 que, el Comité rindió un escrito denominado *Acuerdos del Comité de Clasificación* y Tratamiento. En este documento, recomendó

unánimemente la ratificación de la clasificación de custodia mediana del señor Nicasio Salcedo. Sobre este particular, dispuso los siguiente fundamentos en torno a esta decisión:

> En este periodo de evaluación se toman en consideración sus ajustes y el cumplimiento del plan institucional. Sentenciado a 143 años, por múltiples delitos de la Ley de Armas, Robo, y Agresión Grave. Reclasificado de custodia máxima a custodia mediana el 02 de enero de 2020, hace 05 años. El mínimo de su sentencia se establece para el 22 de diciembre de 2020, le fue aplicada la Ley 85-2022 y el máximo es el 22 de noviembre de 2130, restándole 105 años para extinguirla. Con esta sentencia el Tribunal pretende garantizar la protección de la sociedad mientras se trabaja con la rehabilitación moral y social del confinado.[6]

De conformidad con lo establecido, la agencia dictó *Resolución* y acogió el historial fáctico establecido por el Comité para disponer que el señor Nicasio Salcedo debe permanecer clasificado bajo el nivel de custodia mediante. Aunque reconoció que su evaluación objetiva arrojó una puntuación de (4) indicadora de la clasificación de custodia mínima, procedió a aplicar la modificación discrecional de la gravedad delito. **Puntualizamos que la aplicación de esta modificación bajo el elemento de la gravedad del delito no está prohibida para casos de clasificación mediana y mínima.** (Énfasis nuestro). Además, resaltamos que el Comité al aplicar la modificación discrecional hizo referencia a las características y circunstancias del delito como exige la Sección III(D) del Apéndice K(I), Reglamento 9151, *supra*.

A esos efectos, en consideración al proceso de rehabilitación, el Departamento de Corrección concluyó de manera fundamentada y conforme a su cuerpos reglamentarios que el señor Nicasio Salcedo debe permanecer en la clasificación de custodia mediana.  A la luz de lo discutido, resolvemos que la decisión impugnada no es arbitraria, irrazonable o ilegal, ni refleja una aplicación o interpretación errónea de los cuerpos reglamentarios aplicables. El dictamen procura la protección de la sociedad mientras garantiza el derecho de rehabilitación del recurrente. Igualmente, descansa en el conocimiento especializado de los técnicos sociopenales que componen el Comité, quienes cuentan con la

---

[6] Apéndice de la parte recurrente, pág. 11.

preparación adecuada para atender las necesidades de aquí recurrente. En vista de ello, confirmamos la determinación administrativa, pues es razonable, cumple con el procedimiento reglamentario y no altera los términos de las sentencias impuestas.

Por último, advertimos que esta *Sentencia* apelativa no implica que el señor Nicasio Salcedo no tendrá la oportunidad de ser considerado eventualmente para una evaluación sobre su actual clasificación de custodia. Destacamos que, según las constancias del expediente administrativo, su próximo trámite de reclasificación de custodia corresponde al mes de enero de 2026.[7]

**IV.**

Por los fundamentos que anteceden, **confirmamos** la *Resolución* emitida por el Departamento de Corrección y Rehabilitación.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[7] Apéndice de la parte recurrente, pág. 13.